JOHN G. McClun

*v.*

ISAAC McClun *et al.*

*Opinion filed October 24, 1898—Rehearing denied December 15, 1898.*

1. AMENDMENT—*bill filed in name of insane person may be amended to make conservator a party.* A bill filed in the name of a non-resident insane person "by * * * conservator and guardian," may be amended before final decree, under section 24 of the Practice act, (Rev. Stat. 1874, p. 778,) so as to make the conservator a party in his own name, and the retaining of the insane person as a party is merely an irregularity not calling for reversal.

2. SAME—*amending bill to change style of complainants does not affect jurisdiction over defendants.* Amending a bill to change the style of the parties complainant does not affect the jurisdiction of the court over the defendants, and acts done by them prior to the amendment are done *pendente lite.*

3. PLEADING—*when prayer for general relief will warrant cancellation of deed pendente lite.* A prayer for general relief, in a bill to set aside and cancel a warranty deed to the defendants, is sufficient to

authorize a decree canceling also a quit-claim deed made *pendente lite* from one defendant to the other, although the bill makes no reference thereto.

4. DEEDS—*delivery is essential to the validity of a deed.* A good delivery is as essential to the validity of a deed as the acts of signing and acknowledging.

5. SAME—*effect of delivery of deed during grantor's insanity.* A deed executed contemporaneously with a will, and kept by the grantor in a sealed envelope in his trunk, intending it to be delivered after his death to carry out the terms of the will without the expense of probate, cannot be legally delivered by a third party during the grantor's insanity, though such third party possesses a general power of attorney signed by the grantor while insane.

WRIT OF ERROR to the Circuit Court of Grundy county; the Hon. H. M. TRIMBLE, Judge, presiding.

E. SANFORD, and T. M. NOBLE, for plaintiff in error.

S. C. STOUGH, and W. T. DILLON, for defendants in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is an appeal from a decree in chancery entered in the circuit court of Grundy county, vacating and canceling a warranty deed purporting to have been executed by one Isaac McClun to the plaintiff in error and his mother, Lydia J. McClun, and to convey to said grantees the north-west quarter of section 16, township 31, north, range 8, east of the third principal meridian, in the said Grundy county.

The decree was granted upon a bill which alleged it was not the intention of the grantor, at the time of the execution of the said deed, that the same should be delivered or should become effective; that it was never delivered by the grantor, but was retained by him until he became insane and utterly incapacitated to comprehend or transact affairs of business, and that after he was so stricken with insanity and so incapacitated the deed was fraudulently placed in the possession of the defendants

to the bill. The insane person was a resident of the State of Kansas, and the defendant in error Bulkley was his conservator by virtue of an appointment made by the probate court of Republic county, Kansas. The bill styled the complainant therein, "Isaac McClun, by C. G. Bulkley, conservator and guardian." Section 41 of chapter 86 of the Revised Statutes, entitled "Lunatics," etc., authorizes suits in behalf of non-resident insane persons to be prosecuted in the name of the conservator of such insane person, and for the reason the complainant in this bill was not so styled the defendants thereto moved the court to dismiss the suit for want of jurisdiction. The court granted a cross-motion to amend the bill so as to make "C. G. Bulkley, conservator and guardian of said Isaac McClun, an insane person," a co-complainant in the bill, and such amendment being made, denied the motion to dismiss. Section 24 of chapter 110, entitled "Practice," authorized the amendment introducing the conservator as a party complainant in his own name. Retaining the insane person by the said conservator as a party was but an irregularity—not an error of reversible character.

In the view we take of the case it is not necessary we should discuss alleged erroneous rulings of the chancellor with reference to the admissibility of certain testimony, for the reason that, excluding such testimony from consideration, we find the decree amply supported by other proof in the record.

The facts established by the testimony not objected to are, that the said Isaac McClun, on the 23d day of March, 1883, executed a will and two deeds. One of the deeds (the one here in controversy) purported to convey the tract of land here involved to Lydia J. McClun during the minority of the plaintiff in error and to the plaintiff in error in fee when he should arrive at the age of twenty-one years, and should he not survive to reach that age, to the said Lydia J. McClun in fee. The other deed purported to convey to the same parties, and upon the same

terms and conditions, certain lots in the town of Scandia, Kansas. The will recited the execution of the said two deeds. The attorney, one J. C. Price, who drew the will and the deeds, and as notary took the acknowledgment to the deeds, testified the said Isaac McClun talked with him freely before the instruments were prepared, and that his object in making the deeds and the will, and specifying the deeds in the will, was to enable the grantees in the deeds and legatees in the will to take possession of the lands without the delay and expense of probating the will. The will and the deeds were placed in an envelope and left by the said Isaac McClun in the possession of said J. C. Price for safe keeping. Price retained them for some four months, and then, at the request of the said Isaac McClun, delivered them to him. He placed the deed in question in an envelope, in his trunk, which he kept in a hotel in Scandia. On the 22d day of August, 1883, the said Isaac McClun sold and conveyed to one Andrew Berggen the lots in the town of Scandia which were described in one of the said deeds. Soon after, and in the fall of the same year in which the deeds and the will were signed, said Isaac went to Manitou, Colorado, leaving his trunk containing the deeds remaining in the hotel in Scandia. We find some testimony in the record indicating that his mind was not always in a healthy condition at periods prior to the date the deeds and the will were made, nor was his general health good, but he engaged actively and successfully in the management of his business affairs and accumulated considerable property, and there seems no sufficient proof he was then mentally incapable of executing the deeds and the will. He was under the care of a physician and was concerned about his health when he made the deeds and the will. It was because of his physical afflictions he went to Manitou, hoping to receive benefit from the water of the springs at that place. Soon after he arrived there he engaged in business as a co-partner of one Albert T. Aldrich

in a small retail drug store. While there he indulged in the excessive use of intoxicating liquor, and peculiarities of speech and conduct, which became more marked, were attributed to the effects of liquor. On the first day of September, 1884, he started from Manitou on a trip to Scandia, Kansas. He stopped in Denver for a few days, and was there overcome by his mental infirmity. His partner, Aldrich, was notified of his condition about the 10th of September, and came for him and took him back to Manitou some five or six days thereafter. He was oppressed with insane delusions with reference to the condition of an imaginary bank which he supposed he owned in Kansas, and imagined his business interests in Kansas were threatened with serious and dangerous complications. A few days thereafter, and while, as we think the evidence clearly shows, he was under the influence of an unbalanced mind, a power of attorney was signed by him, bearing date September 18, 1884, authorizing said Aldrich to take general control of his affairs and business in the States of Kansas and Colorado. Aldrich had been in Manitou but a few months when McClun came there, and was the owner of no property, so far as the testimony shows. McClun was the owner of property of considerable value in Kansas, having at one time been a ·banker and engaged also in other important business occupations. Aldrich at once proceeded to Kansas, taking with him the power of attorney. There is testimony tending to show McClun directed Aldrich verbally to get the deed in question and deliver it to plaintiff in error. He arrived in Scandia, secured the trunk which McClun had left at the hotel, opened it and took therefrom the envelope containing the deed before mentioned. On the 27th day of September, 1884, Aldrich gave to Mrs. Lydia McClun the deed for the land in controversy which he found in the envelope in the trunk, at the same time giving her information as to the condition of said Isaac. It appears in the testimony of Mrs. Lydia J. McClun,

Aldrich told her, when he gave her the deed, that Isaac was "ailing." The defendant in error contends she testified he told her Isaac was insane, and that the word "insane" appeared in the transcript made by the short-hand reporter of her testimony but had been erased and the word "ailing" inserted in its stead. The testimony of the short-hand reporter, which is preserved in the record, tends strongly to support the defendant in error in this contention. On the next day after she received the deed Mrs. McClun proceeded by rail to Manitou, where she remained three or four days, during which time Isaac signed an instrument revoking the power of attorney to Aldrich. On the third day of October, 1884, Mrs. McClun and Aldrich started back to Scandia with Isaac. On the 10th day of October she filed in the probate court of Republic county, Kansas, a complaint in writing, verified by her oath, informing the court that said Isaac was a lunatic and of unsound mind, and praying that he might be so adjudged. A jury was empaneled in said court, and the said Isaac, upon the testimony of the said Lydia J. McClun and others, was adjudged insane and Mrs. McClun was appointed his conservator. Said Isaac continues to be insane, and is an inmate of the hospital for the insane at Topeka, Kansas. Mrs. McClun continued to act in the capacity of conservator until October, 1895, when the court ordered she be removed and the defendant in error appointed in her place and stead. It appeared that Mrs. McClun retained the deed which she received from Aldrich until after she returned from Manitou with Isaac. She caused it to be sent to the recorder of Grundy county, Illinois, by mail, where it arrived and was filed for record on the 10th day of October, 1884. At this time the plaintiff in error was of the age of fifteen years. The premises in controversy have been in the possession of the said Mrs. McClun and the plaintiff in error since the date of the recording of the deed, and they have enjoyed the rents and profits during all that time.

We do not think a careful consideration of the facts established by the evidence as preserved in the record leaves the intention and purpose of the said Isaac Mc-Clun, at the time of the execution of the deeds, at all in doubt. The deeds did not pass from the control of the grantor, and there is nothing to indicate it was his intention or desire he should lose dominion and power over them, or that his right, interest or title in any of the property mentioned in either of the deeds should be in any respect abridged or affected by reason of the execution of the instruments. He regarded his rights in and his power over the premises the same after as before the execution of the deeds, which is unmistakably manifested by the subsequent sale of the town property in the town of Scandia. It was clearly proven he was in a condition of irresponsible insanity when he executed the power of attorney to Aldrich, and when it is alleged he verbally directed the deed to be delivered. Though broad and general in its terms as to the powers vested by it in Aldrich, the power of attorney cannot be construed, even had the maker thereof been sane when it was executed, to authorize Aldrich to take the envelope which contained the deed and to deliver the deed for the Grundy county land to Mrs. McClun. The authority granted by the power of attorney, if any was granted, had reference to the care, management and preservation of the estate of the maker, and not to a testamentary disposition thereof. But we think, aside from this, the power of attorney was wholly void because of the mental incapacity of the maker. The better view of the testimony is, Mrs. Mc-Clun was informed of this mental incapacity when the deed was placed in her hands, but, whether she was so advised or not, she parted with nothing as consideration for the delivery of the deed and gained nothing by it if the delivery was not the rational act of the maker of the deed. We have repeatedly held,—indeed, it is fundamental law,—that delivery is as essential to the valid-

ity of a deed as the act of signing or acknowledging it, and that without delivery a deed is void. The proof here is not only that the deed was not delivered by the grantor, but clearly manifests it was never, during his rational moments, his intention the deed should at once become operative or that it should pass beyond his control. The delivery of the deed by Aldrich to Mrs. McClun, if not fraudulent, was wholly unauthorized and void. Not having been delivered the deed did not operate to transfer the title from the insane man, and the chancellor correctly decreed that it be canceled of record.

After the bill had been filed, but before it had been amended by changing the style of the plaintiff, as hereinbefore stated, the said Lydia J. McClun, who was a defendant to the bill, executed and delivered to the plaintiff in error a quit-claim deed, conveying to him all interest she had in the land. The decree orders the quit-claim deed shall also be canceled. The bill makes no allegation with reference to that deed, and does not pray the relief granted with reference to it. The cancellation thereof in the condition of the pleadings is assigned as for error. The plaintiff in error and Mrs. McClun were named as the grantees in the deed which the bill prayed should be canceled. They were both made parties defendant to the bill. The amendment simply effected a change in the style of the complainant, and had no effect to deprive the court of jurisdiction it possessed over the defendants to the bill. The evidence disclosed that, pending the litigation, the defendant Lydia J. McClun had conveyed to her co-defendant all possible interest in the land which was the subject matter of the litigation. The bill contained a general prayer "for such other and further relief in the premises as the nature of the case may require." It was not error to decree the deed made pending the litigation should be canceled.

The decree of the circuit court is affirmed.

<em>Decree affirmed.</em>