### Sheffield Steel & Iron Company, Appellee, v. The Jos. Joseph & Brothers Company, Appellant.

### Gen. No. 29,907.

1. SALES—*materiality of letters showing cause of failure to deliver goods sold.* Where the defendant, in an action for damages for nondelivery of material, had made a bid on material owned by the government, and took from plaintiff an option to sell to it the same material, and where after the acceptance of the bid a formal contract was entered into, in which plaintiff agreed to buy "approximately" a stated number of tons, and where the government delivered a smaller quantity than such stated tonnage, it was error to refuse to admit letters from the Ordnance Department showing that the government had no more to deliver than was delivered to plaintiff, on the ground that the facts therein stated

were not material, no objection being made that the letters were incompetent because they were not the best evidence.

2. DAMAGES—*when buyer not entitled to recover damages for nondelivery of goods sold.* Where the defendant in an action for damages for nondelivery of material sold had made a bid on material owned by the government, and took from plaintiff an option to sell to it the same material, and where after the acceptance of the bid a formal contract was entered into, in which plaintiff agreed to buy "approximately" a stated number of tons, and where the government delivered a smaller quantity and never delivered the remainder, plaintiff was not entitled to recover for the quantity not delivered, if it had knowledge that defendant's only source of supply was the material purchased from the government, and that the contract was made on that basis, calling for the delivery to plaintiff as the same should be shipped by the government, of the same "approximate" quantity of the specified material which defendant had purchased from the government, since in such case the contract was a conditional one.

3. DAMAGES—*liability of seller to refund freight charges paid by buyer on rejected goods.* In an action for nondelivery of material under a contract, and for freight paid by plaintiff on certain cars of rejected material, plaintiff could not in any event recover the freight to a point other than that designated in the contract for delivery, even assuming that through mistake of the defendant or the party shipping the material plaintiff was required to pay charges at all.

4. DISCONTINUANCE, DISMISSAL AND NONSUIT—*proof of failure of corporation to pay franchise taxes.* Proof of the failure of plaintiff corporation to pay its franchise charges on a certain date was not a cause for dismissing the suit in question, since they may have been paid since that date, the objection only being good under the statute, Cahill's St. ch. 32, ¶ 128, until they have been paid in full.

5. DISCONTINUANCE, DISMISSAL AND NONSUIT—*nonpayment of franchise taxes by corporation plaintiff as grounds for dismissal.* A suit could not be dismissed for the failure to pay franchise taxes, it could only be continued until the taxes were paid.

Appeal by defendant from the Municipal Court of Chicago; the Hon. ALFAR M. EBERHARDT, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1924. Reversed and remanded. Opinion filed July 14, 1925.

HERBERT J. FRIEDMAN and HERBERT A. FRIEDLICH, for appellant; FRANKLIN R. OVERMEYER, of counsel.

JOSEPH B. LAWLER, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

Defendant appeals from a judgment against it for $5,300 obtained after a trial before a jury. Plaintiff's claim is for damages for the nondelivery of approximately 900 tons of steel billets purchased by the plaintiff from the defendant in 1919, and for freight paid by plaintiff on four cars of such steel which were rejected because the material shipped therein was not according to the contract.

It appears from the evidence that defendant made a bid on a quantity of steel billets owned by the Government, and on August 7, 1919, before its bid was accepted, took from the plaintiff a written option to sell the same material to the plaintiff for $27.50 per gross ton, delivered at Riverdale, Illinois. After defendant's bid was accepted by the Government, a formal contract was entered into between the parties dated August 12, 1919, in which defendant agreed to sell, and plaintiff to buy, "approximately 3200 tons" of "5 13/16 gothic steel billets, as per description in our letter to you of August 7, 1919," at the price of $27.50 per gross ton, f.o.b. cars at Riverdale, Illinois, "Time of shipment: as made by the Government." Under this contract about 2,300 tons were delivered to plaintiff and accepted and paid for. The remaining tons were never delivered.

Defendant contends that it was excused from making further deliveries because the plaintiff knew that defendant bought these steel billets from the Government and that the contract recognizes that fact by requiring deliveries to be made to the plaintiff only "as made by the Government." On this theory, defendant sought to prove that after 2,300 tons had been delivered, the Government notified defendant that it had no more to deliver, and that in fact it did

48 APPELLATE COURTS OF ILLINOIS.

Sheffield S. & I. Co. v. The Jos. J. & B. Co., 238 Ill. App. 45.

not deliver any more, claiming that defendant's bid was for "approximate" tonnage only, which had all been shipped. This offered proof was in the form of letters from the Ordnance Department, and, as we understand the record, the trial court excluded them, not because they were letters, but because the facts therein stated were not material. In this the court erred. Of course, the letters are not the best evidence, and are incompetent if objected to on that ground. But apart from the letters there was some evidence tending to support defendant's theory that plaintiff had full knowledge of the fact that defendant's only source of supply was the material purchased from the Government, and that the contract between the parties was made upon that basis, calling for the delivery to the plaintiff, as the same should be shipped by the Government, of the same "approximate" quantity of the specified steel billets which defendant had purchased from the Government. If, in fact, the contract between plaintiff and defendant was made upon that basis,—as the contract itself and the letter of August 7, 1919, seem to indicate—and if plaintiff received from defendant all the specified material which was actually delivered to defendant by the Government, defendant is not liable for not delivering the remainder of the "approximate" quantity specified. (*Scialli v. Correale,* 97 N. J. L. 165; *Wilson v. Clarke* [Gil. 318], 20 Minn. 367.) In other words, if such be the facts, the contract as made was a conditional one, in which defendant's obligation to deliver the specified quantity to the plaintiff was dependent upon the supply in the hands of the Government, and if plaintiff received from defendant all the specified material the Government delivered to defendant, there was no breach of the contract. Defendant offered several instructions on this theory, which it was error for the court to refuse.

As to the claim for freight paid, it is clear from the evidence that defendant is not liable for the full amount paid by the plaintiff. If it be assumed that through the fault of defendant, or the Government, a mistake was made which required the plaintiff to pay such freight charges on the four cars that were not accepted, as were caused by that mistake, there is no evidence that would justify the allowance of freight charges to Kalamazoo, Michigan. There is no proof that defendant ever agreed to pay freight to that point, and no apparent reason why it should.

We are not impressed with the purely technical objections of plaintiff's counsel as to the consideration of these questions on this appeal. Practically all the contentions made by him are answered by the case of *Yarber v. Chicago & A. R. Co.*, 235 Ill. 589, if not by *Miller v. Anderson,* 269 Ill. 608.

As to the contention of defendant's counsel that the court should have dismissed the suit because plaintiff's franchise tax was not paid, the only proof offered was that plaintiff's 1920 franchise tax had not been paid in November, 1920. *Non constat* it may have been paid since. The objection is only good "until such franchise taxes  *  *  *  have been paid in full." (Cahill's St. ch. 32, sec. 128.) For the same reason the suit could not be dismissed for failure to pay franchise taxes. It could only be continued until the taxes were paid.

For the reasons stated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

BARNES, P. J., and GRIDLEY, J., concur.