AMMAN FOOD & LIQUOR, INC., Plaintiff-Appellant, *v.* HERITAGE INSURANCE CO., Defendant-Appellee.

First District (1st Division)   No. 77-44

Opinion filed October 23, 1978.

Norman Hanfling, of Fein & Hanfling, of Chicago, for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (Thomas H. Ryerson, Frank L. Schneider, and James T. Ferrini, of counsel), for appellee.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:

Amman Food and Liquor, Inc., appeals from an order of the Cook County Circuit Court dismissing its action against Heritage Insurance Company of America for Amman's "failure to pay franchise taxes within the time permitted."

Due to the nature of the issues raised, it is useful to consider the pertinent facts in this case in chronological sequence:

On January 4, 1975, Heritage issued to Amman for the sum of $1,970 a policy insuring Amman's premises to the extent of $80,000 against loss or damage by fire.

On February 23, 1975, while that insurance policy was in effect, Amman's premises were destroyed by fire.

On August 15, 1975, the Secretary of State sent Amman a notification of its delinquency in franchise tax payments.

On December 1, 1975, Amman was dissolved by the Secretary of State for delinquency in payment of franchise taxes.

On January 16, 1976, in view of Heritage's refusal to honor Amman's claim, Amman filed an action in the circuit court to compel payment of its claim.

On February 18, 1976, Heritage filed an answer to Amman's complaint going to its merits.

On February 23, 1976, the one-year time limit of the insurance policy for commencing actions for recovery under it expired.

On May 27, 1976, on payment of the franchise taxes owed, Amman was issued a certificate of reinstatement by the Secretary of State.

On June 9, 1976, Heritage filed a motion to dismiss Amman's action based on Illinois Civil Practice Act, section 48(1)(b) (Ill. Rev. Stat. 1975, ch. 110, par. 48(1)(b)) because Amman "was not an entity capable of suing at the time suit was filed or at any time, and even if capable of suing it was barred by section 142 (of the Illinois Business Corporation Act, Ill. Rev. Stat. 1975, ch. 32, par. 157.142) from suing, citing a decision of the Illinois Appellate Court.

On June 22, 1976, Amman responded to this motion, stating that it had been reinstated by the Secretary of State, that any defect on its part had been cured, and that section 142 is not an absolute bar to maintaining an action.

On August 23, 1976, the circuit court entered the order from which Amman appeals.

The issue presented in this appeal is whether the circuit court erred in granting a defendant's motion to dismiss an action because the plaintiff was a corporation which had been dissolved for nonpayment of franchise taxes after the occurrence upon which the action was based, but before the filing of the action, and the plaintiff corporation had been reinstated before the motion to dismiss was filed, but after the applicable period of limitation had expired.

Decisions applying Illinois law to similar facts have reached contrary results based on different interpretations of section 142 of the Business Corporation Act. For example, in *Jorgensen v. Baker* (1959), 21 Ill. App. 2d 196, 157 N.E.2d 773, *cert. denied*, 361 U.S. 962, 4 L. Ed. 2d 543, 80 S. Ct. 590, it was stated that a motion to dismiss an action under such circumstances was properly granted because section 142 bars a dissolved corporation from initiating or maintaining any civil action, so that a filing of an action by such a corporation would not toll the applicable statute of limitation. On the other hand, *Rush Street Rugby Shop, Ltd. v. Maryland Casualty Co.* (7th Cir. 1969), 409 F.2d 540, declared that such a filing would operate to toll a period of limitation because section 142's bar did not prevent a corporation from "commencing," as distinguished from "maintaining," an action.

Because under their stated rationales, these decisions' factual foundations are not meaningfully distinguishable, they stand as conflicting authority. Neither of these decisions articulates a consideration of the effect of all applicable laws to such a motion to dismiss, so that it is not

possible to determine directly which rationale is valid, or whether an unarticulated rationale might serve to reconcile these seemingly contradictory results by rendering the facts of the two cases meaningfully distinguishable.

Since the time of these decisions, their rule has been recited in *dicta* or mechanically applied as controlling precedent in two cases, *United States ex rel. Triangle Landscaping Corp. v. Home Insurance Co.* (N.D. Ill. 1975), 403 F. Supp. 320, and *Kaybill Corp. v. Cherne* (1974), 24 Ill. App. 3d 309, 320 N.E.2d 598. Neither, however, analyzed the rationales of the prior decisions or added to their bases. Accordingly, it is necessary here to undertake a full inquiry in order to determine the correct rule to apply to the facts before us in this case.

Our inquiry must begin by considering this issue in the procedural context in which it has come before this court, as an appeal from an order granting a motion to dismiss an action. The question then becomes whether there was a proper basis for dismissing Amman's cause of action.

■■ Heritage's motion to dismiss was expressly based on section 48(1)(b) of the Civil Practice Act which provides for dismissal where the plaintiff lacks the legal capacity to sue. However, because Amman was reinstated prior to this motion, and such reinstatement ended its legal disabilities (*Sternberg Dredging Co. v. Sternberg's Estate* (1953), 351 Ill. App. 514, 115 N.E.2d 557 (abstract)), Amman's reply asserting its reinstatement, therefore, refuted this ground.

Although Heritage did not expressly cite any other ground for dismissal under section 48, its motion contained additional language which indirectly raised, by referring to section 142 of the Business Corporation Act and citing *Jorgensen*, the ground provided in section 48(1)(e), failure to commence the action within the time limited by law. The language of the circuit court's order of dismissal indicates that the motion was granted on that basis. Consideration of this ground requires consideration of the significance of Amman's filing a complaint within the limitation period of the insurance policy on which its action was predicated.

Heritage argues that this filing was without legal effect because Amman was without the legal capacity to file such a complaint. Amman disputes this point. Without passing on the merits of these contentions, we note that, if Amman were correct, its filing would clearly have constituted commencement of an action, and Heritage's section 48(1)(e) motion would be groundless.

On the other hand, if Heritage were correct, and Amman was without capacity to commence an action at the time it filed its complaint, Amman's response to Heritage's motion to dismiss, that it had been reinstated and any defect on its part had been cured, must be considered.

Just as sections 4 and 33 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 4 and 33), require that Heritage's vague references to *Jorgensen* and section 142 of the Business Corporation Act be regarded as raising the grounds for dismissal in section 48(1)(e) in order to do substantial justice between the parties and enable their controversy to be resolved on its substantive merits, these provisions require that the significance of Amman's reply to that motion be given an appropriate effect regardless of technical vagueness. In its reply Amman asserted that its reinstatement cured any defects on its part so the significance of reinstatement in the light of a section 48(1)(e) motion must be considered.

A section 48(1)(e) motion raises the bar of the statute of limitations, and Heritage's motion, it must be inferred, asserted that Amman's earlier filing did not toll the limitation period for this action. Amman's reply, therefore, must be viewed as asserting that, in view of its reinstatement, the earlier filing did toll the limitation period.

Although Amman did not expressly link its reply to section 46 of the Civil Practice Act, it is obvious that the only way in which subsequent reinstatement of a plaintiff corporation could affect the status of its former filing would be through a relation-back mechanism, such as that provided in section 46(2). The relation-back effect of section 46(2) provides that certain amendments correcting defects in pleadings shall relate back to the time of filing of the original pleadings for the purpose of meeting the requirements of statutes of limitation. Among the types of amendments expressly covered by section 46(2) and (4) are amendments remedying an original pleading that failed to state a cause of action, provided the original pleading identified the transaction upon which the action is based, and amendments substituting a proper defendant for an improper defendant, provided the original pleadings sufficiently notified the proper defendant of the impending action and met other requirements.

An amendment curing a third possible defect in original pleadings, an improperly named plaintiff, *is not expressly covered by section 46,* but this omission is understandable, since it would be rare for a plaintiff to misname itself. When confronted with such rare cases, such as a situation in which an action had been mistakenly filed in the name of a person who was legally incompetent, the courts determined that the policy upon which section 46 is based to permit an amendment naming a competent person as plaintiff would relate back to the date of filing of the original action. *Flannery v. People* (1906), 225 Ill. 62, 80 N.E. 60; *McClun v. McClun* (1898), 176 Ill. 376, 52 N.E. 928; *In re Gringolph's Estate* (1969), 114 Ill. App. 2d 362, 252 N.E.2d 726.

Therefore, Amman's response to the motion to dismiss filed by Heritage by implication raised the issue of availability of the relation-back mechanism of section 46 of the Civil Practice Act. That Amman did

not expressly file a motion to amend its pleadings, as contemplated by section 46, is understandable, since no change in the wording of its complaint was called for, the capacity of the named plaintiff being the only change involved. Thus, Amman's reply must be regarded as equivalent to filing a motion to amend its pleadings pursuant to section 46 and therefore Amman's complaint subsequent to that response had the status of a complaint amended to name a proper plaintiff and such an amended complaint related back to the time of filing of the original complaint.

Accordingly, even if Amman lacked capacity to sue at the time of the original filing, the fact that it possessed such capacity when Heritage filed its motion to dismiss and Amman's raising such capacity in its response operated to amend the pleadings, and because the original pleadings were within the permitted time, section 46's relation-back would bring the amended pleadings within the permitted time.

Thus, the motion to dismiss Amman's action would be without grounds if section 46 was available to Amman, or if Amman's original filing were effective to toll the applicable limitation period. Grounds for granting such a motion would exist only if section 46 were for some reason unavailable to Amman. Accordingly, it is sufficient for the disposition of this appeal to determine whether Amman was in some way unable to reap the benefits of section 46 of the Civil Practice Act, despite that Act's general applicability to such actions. Ill. Rev. Stat. 1975, ch. 110, par. 1.

Heritage, in its motion to dismiss, cited both section 142 of the Business Corporation Act and *Jorgensen* as authority for dismissal of an action under such circumstances, thereby impliedly raising the possibility that these authorities somehow denied the effect of section 46 to a corporation dissolved for delinquency in franchise tax payments.

No such rule is expressly stated in either section 142 or *Jorgensen,* however, so it is necessary to determine whether such a rule arises by implication when section 142 is properly construed, particularly under the construction given it in *Jorgensen.*

The rationale articulated in *Jorgensen* would clearly support Heritage's contention. It states flatly that, although subsequent reinstatement may entitle a dissolved corporation to continue prosecution of such an action, its reinstatement must occur prior to expiration of the limitation period because of section 142's prohibition against maintaining an action while delinquent (21 Ill. App. 2d 196, 203-04). Such a rule would conflict with section 46 of the Civil Practice Act because under section 46 it is not necessary that reinstatement occur before expiration of the limitation period. All that is necessary under section 46 is that the plaintiff be reinstated at the time it offers to amend its pleadings.

In *Jorgensen*, however, the objection to the plaintiff's capacity was made in June 1957, and reinstatement did not occur until September 1957. Accordingly, that plaintiff was incapacitated throughout the time when it could have avoided the defendant's adverse motion by filing a section 46 motion, and therefore the issue of availability of section 46 was never before that court.

For this reason, the rule in *Jorgensen* as worded there is too broad to be supported by the facts of that case, and to the extent that such wording would deprive a plaintiff of the effect of section 46 of the Civil Practice Act, it must be regarded as mere *dicta*. Therefore, the holding of *Jorgensen* provides no basis for Heritage's contention that section 46 was unavailable to Amman.

*Jorgensen* does, however, cite authority for the proposition that section 142's bar against "maintaining" any action also bars a delinquent corporation from "instituting" any action. The cited case, *Shore Management Corp. v. Erickson* (1942), 314 Ill. App. 571, 41 N.E.2d 972 (abstract), however, is an abstract of an opinion which does not support such a view. Accordingly, this proposition is erroneously presumed in *Jorgensen* to have been previously established, and neither *Shore Management* nor *Jorgensen* derived such a proposition from construction of section 142.

The sole decision which did address the issue of construction of section 142, *Rush Street Rugby Club*, reached the opposite conclusion. It held that section 142's bar did not extend to "commencing" an action, so that a delinquent corporation's filing of an action would operate to toll a period of limitation in the same way as a filing by a corporation with no section 142 disability. Under this construction of section 142, section 46 would clearly be operative because the effect of section 46 is not to make the filing itself toll the statute of limitation, but merely to enable a subsequent amendment to a pleading to relate back to the original filing, a less significant impact than that permitted in *Rush Street Rugby Club*.

*Rush Street Rugby Club*, however, derived this rule without expressly following accepted principles of statutory construction. Thus, neither its nor *Jorgensen's* statements regarding the proper interpretation of section 142 have a readily apparent basis.

To properly construe a statute, it is necessary to consider the ordinary meaning of the words employed, and if that meaning is clear, no further recourse is necessary (*Illinois Chiropractic Society v. Giello* (1960), 18 Ill. 2d 306, 164 N.E.2d 47). In considering section 142, however, it is readily apparent that the term "maintain" is ambiguous. It is defined by Black's Law Dictionary as either indicating continuation of an action or the entire process of prosecuting an action (Black's Law Dictionary 1105 (4th ed.

1951).) No aid in determining which of these alternative meanings is proper is provided from the context of section 142 itself.

When ambiguity is found in the wording of a statute it is necessary to examine related statutory provisions for evidence of the intended meaning (*Burns v. Industrial Com.* (1934), 356 Ill. 602, 191 N.E. 225). Among the provisions of the Business Corporation Act, section 94 is the most clearly relevant. It provides that dissolution, whether by the Secretary of State for failure to pay franchise taxes or by court order:

> "* * * shall not take away or impair any remedy available to or against any such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name." Ill. Rev. Stat. 1977, ch. 32, par. 157.94.

■■ Clearly, if this protection is available to a corporation that has been dissolved for failure to pay franchise taxes, it is available to corporations delinquent in such payments. Thus, section 94 grants delinquent corporations authority to "commence" certain actions within a certain period, while section 142 bars them from "maintaining" any action while delinquent. Unless the term "maintain" means merely "continue," these Sections constitute conflicting prescriptions regarding the powers of delinquent corporations during the period within two years of their dissolution. Because terms used in a legislative act are to be assigned harmonious meanings if possible (*Mann v. Board of Education* (1950), 406 Ill. 224, 92 N.E.2d 743), "maintaining" must be regarded as meaning continuing prosecution of an action.

Such a distinction is clearly workable at its extremes. The bar of section 142 against "maintaining" any action until taxes are paid would prevent entry of a judgment for a delinquent corporate plaintiff, whereas the saving provision in section 94 would prevent dismissal of an action for the sole reason that the corporation was delinquent in franchise tax payments at the time it filed its complaint. Between these extremes, the line dividing commencing and maintaining an action would be more difficult to draw, but such a case is not before this court. On the contrary, the present case presents the clearest possible example of an issue falling beyond the scope of "maintaining" an action and within the scope of "commencing" an action.

Here, the issue does not relate to Amman's power as a dissolved corporation to file or answer motions on the pleadings, because Amman was reinstated before it undertook these measures. Nor does it relate to

the effect in isolation of Amman's filing of pleadings while dissolved, because these pleadings, under section 46, merely mark the time to which a subsequent amended pleading by a reinstated plaintiff relate back.

Thus, the issue here is whether Amman's original pleadings are to be treated as if they had never been filed or whether their bare existence is to be acknowledged for the purposes of the relation-back operation of section 46 of the Civil Practice Act. It would be difficult to conceive of a matter more preliminary in nature. Accordingly, if section 94's authority to commence actions within two years of dissolution means anything, it means that a corporation is entitled to the relation-back operation of section 46 when the original pleadings were filed within two years of its dissolution, as in the present case.

■■ The foregoing has demonstrated that operation of section 46 of the Civil Practice Act to the benefit of a corporation in Amman's situation is not contrary to any prior decisions under Illinois law and is mandated under proper construction of sections 94 and 142 of the Business Corporation Act. Such operation of section 46 is also mandated by public policy and fundamental concepts of justice.

Public policy requires such a result for three reasons. First, denial to a party of the protection of a basic procedural measure such as section 46 of the Civil Practice Act would present troubling questions regarding denial of due process and equal protection.

Second, section 142 of the Business Corporation Act is a measure designed to encourage payment of taxes. Section 82(a) of that Act, which provides for dissolution for tax delinquency, makes it clear that this measure is coercive rather than punitive in character because it contemplates routine reinstatement of dissolved, tax-delinquent corporations. Additionally, section 94 clearly evinces a legislative intent that interests of corporations not be unduly frustrated by dissolution, and the only portion of the Act which provides for penalties for dissolved corporations prescribes only fines for tax-delinquent corporations. Moreover, the goal of maximizing tax revenues which section 142 is intended to promote would not be served by a contrary result, for if the rule were that payment of its back taxes would not enable Amman to withstand Heritage's section 48 motion, Amman would have had no incentive to pay its delinquent taxes. Instead, under the present rule, once Amman became aware of its disability, it was motivated to pay its franchise taxes before Heritage filed its motion to dismiss.

The third reason that public policy requires such a result is that corporations dissolved by court order are, like natural persons, represented after their demise by a legal successor, whereas no such representative exists for corporations dissolved for nonpayment of franchise taxes. Accordingly, such dissolved corporations themselves

must represent their own interests by qualifying for reinstatement. If such dire consequences as those which would attend a contrary result in this case were to flow from brief periods of delinquency, corporations dissolved for franchise tax delinquency would be in a drastically worse position than those dissolved by court order, for whom a receiver is appointed and who suffers no section 142 disability. Such unequal positions would be irrational, since corporations dissolved by court order include not only those with internal problems, but also those which procured their corporate franchises through fraud and which have engaged consistently in criminal activities. (Section 82, Business Corporation Act, Ill. Rev. Stat. 1977, ch. 32, par. 157.82.) Accordingly, to allow dismissal of Amman's action under these circumstances would involve placing greater hardship on a corporation guilty of a minor tax deficiency than on corporations guilty of serious criminal conduct.

Fundamental concepts of justice militate against a contrary result in two ways. First, it would be injurious to innocent creditors and employees while helpful to a defendant who has no special claim to favor. This is because, were Amman's claim meritorious, such a rule would deprive it of the proceeds of that claim while allowing Heritage to avoid its contractual obligations. Because corporations that default in payments of such minor fees as franchise taxes are often in severe financial difficulties, it would often be the corporation's creditors and employees rather than its shareholders who would be deprived of the proceeds of such claims, and since such persons have little or no control over such decisions as whether a corporation is to pay its franchise taxes, they should be protected against unnecessary loss through improper management conduct. (See *Landers Frary & Clark v. Vischer Products Co.* (7th Cir. 1953), 201 F.2d 319, and *Warren v. First National Bank* (1893), 149 Ill. 9, 38 N.E. 122.) Heritage, on the other hand, would benefit from the mismanagement through no virtue of its own. Heritage contracted to insure the risk in question and received ample notice of the claim.

Finally, the result urged by Heritage would be fundamentally unjust under the facts of this case because of its procedural history up to the time of the motion to dismiss.

Amman filed its action in this case on January 16, 1976, after Heritage refused to honor its claim under their insurance contract. A month later, Heritage filed an answer on the merits of the case. Then, in June of that year, Heritage filed its motion to dismiss. The limitation period for this action expired in February.

■■ The purpose of a statute of limitation is to protect a potential defendant from a stale claim, one filed after the facts have been forgotten or rendered unavailable. (*People ex rel. Stubblefield v. Wochner* (1927), 244 Ill. App. 30; *Hamamoto v. Torres* (1978), 64 Ill. App. 3d 1033, ___

N.E.2d ____.) Such statutes are not to be used as a technical device to avoid liability where a defendant has received timely notice of an impending complaint and has been in no way prejudiced by the passage of time (*Hamamoto v. Torres; Wetzel v. Hart* (1963), 41 Ill. App. 2d 371, 190 N.E.2d 619; *Kinsey v. Thompson* (1963), 44 Ill. App. 2d 304, 194 N.E.2d 565). Because the contractual limitation period in this case was prescribed by statute, these principles are applicable in viewing the position of Heritage.

Heritage's position was that it received timely notice of Amman's loss, yet refused to pay it, received notice of an action timely filed and answered it on the merits, then, after the period of limitation for Amman's action had passed and it had become too late for Amman, under the rule Heritage urges us to adopt, to gain reinstatement in time to commence an action within that period, Heritage entered its objection to Amman's lack of capacity under section 142 of the Business Corporation Act. Whatever the motives or knowledge of the parties, in this procedural setting, the period of limitation would be transformed from a measure to protect defendants into a weapon for defendants to kill causes of action of unwary corporate plaintiffs if we were to adopt the rule proposed by Heritage.

For the above reasons, dismissal of Amman's action against Heritage was error. The order of dismissal of the Cook County circuit court is vacated and the cause remanded.

Reversed and remanded.

McGLOON and O'CONNOR, JJ., concur.