**GOODSONS & COMPANY, INC., Plaintiff,**

v.

**FEDERAL REPUBLIC OF NIGERIA and Central Bank of Nigeria, Defendants.**

No. 82 Civ. 3582 (RLC).

United States District Court, S.D. New York.

March 7, 1983.

Richard Simon, Hauppauge, N.Y., for plaintiff.

Kissam, Halpin & Genovese, New York City, for defendants; James G. Simms, Laurence May, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

This action is part of a group of cases which arose out of the Nigerian government's unilateral suspension of its obligations with foreign suppliers under cement contracts, due to an avalanche of shipments to its ports in 1975. Payment for the contracts was to be made pursuant to letters of credit set-up by the Central Bank of Nigeria ("Central Bank"), with the Morgan Guaranty Bank of New York[1] ("Morgan"), for the benefit of each of the suppliers. However, when the Nigerian government suspended its obligations under the contracts, it simultaneously instructed Morgan not to pay under the letters of credit. Some of the suppliers re-negotiated the terms of the contracts, others refused to re-negotiate and brought suit against the Nigerian government in this court alleging that Nigeria was guilty of anticipatory repudiation of its contract. *See, Decor by Nikkei International v. Federal Republic of Nigeria,* 497 F.Supp. 893 (S.D.N.Y.1980) (Pierce, J.), *aff'd sub nom, Texas Trading & Milling Co. v. Federal Republic of Nigeria,* 647 F.2d 300 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

One of those suppliers, Decor by Nikkei International ("Decor"), arranged for the purchase of cement for the Nigerian contract from Goodsons & Company ("Goodsons"), the plaintiff in this action, and Productos Fontanet ("Fontanet"). As payment for the cement purchases, Decor transferred $ one million, twenty thousand dollars to Goodsons and Fontanet under a letter of credit. Although payment of the letter of credit was to be through Morgan in New York, the transfer advice drawn up by Decor allowed the funds to be sent to Goodsons and Fontanet via the Banco de Bilbao in Spain. Part of the cement was shipped to Nigeria, before the latter suspended its obligations under its contract with Decor. Payment on these shipments was duly made by Morgan by transferring a portion of the letter of credit to the Banco de Bilbao in Spain, as agreed. Thereafter, no further payments were made.

Plaintiff alleges that it was unable to perform the remaining part of its contract with Decor because of the Nigerian government's actions. Thus it brings this suit for payment under the letter of credit. For their part, defendants contend that the complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(6), F.R.Civ.P. or alternatively, for summary judgment under Rule 56. They argue vigorously that plaintiff lacks the capacity to sue, since when instituting this action, plaintiff was and still is, a dissolved Illinois corporation; furthermore, they claim that the suit is barred by the statute of limitations. Inasmuch as the critical and dispositive issue concerns the legal suffi-

---

**1.** At the direction of the Nigerian government, the Central Bank of Nigeria established an irrevocable, transferrable documentary letter of credit dated July 14, 1975 with Morgan as advising bank and for the benefit of Decor. Defendants' Exhibit 3.

ciency of the complaint, the motion will be treated as one to dismiss under Rule 12(b)(6), F.R.Civ.P.

Defendants' first two assertions may be disposed of quickly. First, a careful reading of the related cases previously decided by this court reveals that the facts supporting subject matter jurisdiction in those cases are present here. *See, Decor by Nikkei International v. Federal Republic of Nigeria, supra,* 497 F.Supp. at 902–06; *Reale International v. Federal Republic of Nigeria,* 562 F.Supp. 54, at 56 (S.D.N.Y.1982) (Haight, J.).

■ Section 1605(a)(2) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.,* provides that immunity will not be afforded to the foreign sovereign where it is based upon an act "outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Defendants argue that since payment was to be made through the Banco de Bilbao in Spain, and indeed, the check from Morgan was forwarded to Goodsons and Fontanet in Spain, *see* Defendants' Exhibit 9, the transaction had no direct effect in the United States as required under section 1605(a)(2).

However, in *Decor by Nikkei International v. Federal Republic of Nigeria, supra,* jurisdiction was found where one of the seller's contracts with the government of Nigeria originally named a bank in Hamburg, West Germany, as the bank through which the letter of credit was to be made payable. *Decor by Nikkei International v. Federal Republic of Nigeria, supra,* 497 F.Supp. at 897. Furthermore, in *Reale International v. Federal Republic of Nigeria, supra,* slip. op. at 5, the documents called for under the letter of credit could be presented to the Banco de Bilbao in Spain; however, since, as here, payment could only be effected by Morgan in New York upon presentation of the papers by the Banco de Bilbao, the court held that there was subject matter jurisdiction. The mere fact that the papers could be presented to the

Banco de Bilbao in Spain, was expressly found not to negate "the direct effect in the United States" required under section 1605(a)(2) which occurred because a New York bank had "engineered and implemented" the transaction. *Id.* at 7. The instant case is indistinguishable from *Reale,* and I am persuaded to apply its reasoning to the case at bar.

■ No doubt realizing the weakness of the above contention, defendants also argue that the court lacks jurisdiction over the Nigerian government since Goodsons was not primary beneficiary under its contract with Decor. That argument has no merit. It has been uniformly held that a letter of credit creates an obligation independent of the underlying contract. *Venizelos v. Chase Manhattan Bank,* 425 F.2d 461, 465 (2d Cir.1979); *Pringle-Associated Mortgage Corp. v. National Bank of Hattiesburg,* 571 F.2d 871, 874 (5th Cir.1978); *Chase Manhattan Bank v. Equibank,* 550 F.2d 882, 885 (3rd Cir.1977). The fact that plaintiff was not a party to the cement contract would have no bearing on the Nigerian government's obligations to plaintiff as assignee under the letter of credit. Accordingly, the contention that subject matter jurisdiction is lacking must fail.

■ Defendants next argue that the action should be dismissed because plaintiff was dissolved as a corporation in 1980 due to its failure to pay the Illinois franchise taxes. Section 157.94 of the Illinois Revised Statutes allows a dissolved corporation two years within which to bring an action on any right or claim which existed prior to dissolution, Ill.Rev.Stat. ch. 32 § 157.94 (1974). However section 157.142 provides that: "No corporation required to pay a franchise tax, license fee or penalty under this Act shall maintain any civil action until all such franchise taxes, license fees and penalties have been paid in full." *Id.* at 157.142.

These provisions were recently interpreted in *Amman Food & Liquor Co. v. Heritage Insurance Co.,* 65 Ill.App.3d 140, 22 Ill.Dec. 242, 248, 382 N.E.2d 562, 568 (1978). There the Illinois Appellate Court held that the import of section 157.142 was that no

corporation dissolved because of failure to pay franchise taxes could "continue" an action. *Id.* 22 Ill.Dec. at 247, 382 N.E.2d at 567. However, that section neither prevents a dissolved corporation from bringing suit within the two year period, nor does it provide a basis for dismissal of an action brought by the dissolved corporation. *Id.* at 247–48, 382 N.E.2d at 567–68. Rather, a court would be empowered to stay the action until the defunct corporate entity made the required payment of the franchise taxes. *Id.* at 248, 382 N.E.2d at 568.

However, defendants' final contention that the action is time barred prevails, and for that reason the action must be dismissed.

NYCPLR § 213 provides six years within which to bring a contract action.[2] The defendants make two assertions in this regard; first, that the action accrued from the time of the anticipatory repudiation of the contract by Nigeria in September, 1975, rather than on May 31, 1976, when the letter expired, and second, that even if the cause of action accrued at the time of the expiration of the letter of credit, the case is still time barred since as amended by Decor's transfer advice, Goodsons' right to draw under the letter of credit expired on January 15, 1976.

By its terms, the letter of credit was governed by the Uniform Customs and Practice for Documentary Credits (1962 Revision) ("UCP"). Defendants' Exhibit 3. Article 46 of the UCP provides that: " . . . The credit can be transferred only on the terms and conditions specified in the original credit with the exception of the amount of the credit, of any unit price stated therein and of the *period of validity or period for shipment, any or all of which may be reduced or curtailed.*" (emphasis added)

In the transfer advice sent by Decor to Morgan notifying Morgan of the transfer of $ one million, twenty thousand dollars to Goodsons and Fontanet, Decor amended the expiration date to provide that Goodsons' and Fontanet's rights under the letter of

credit expired on January 15, 1976, as was clearly its prerogative under Article 46 of the UCP. Defendants' Exhibit 8, Document 1. Furthermore, in the letter sent by Morgan informing Goodsons and Fontanet of their rights under the letter of credit, Morgan stated . . . "your drafts must indicate that they are drawn under the aforementioned Irrevocable Credit Number . . . and must be presented to our Commercial Credit Department . . . not later than January 15, 1976 *on which date this advice expires.*" (emphasis added) Defendants' Exhibit 8, Document 2 at 2.

Construing the governing documents in the light most favorable to the plaintiff, the cause of action accrued six years from the expiration of the letter of credit—which as amended was January 15, 1976. Plaintiff commenced this action on June 1, 1982— more than six years after the expiration of its rights under the letter of credit. Plaintiff has raised no questions of ambiguity in the letter of credit or in the transfer advice. Accordingly, the action is barred as untimely and defendants' motion to dismiss is granted.

IT IS SO ORDERED.

---

**2.** NYCPLR § 213 provides in part: "The following actions must be commenced within six years: . . . . 2. an action upon a contractual obligation or liability express or implied, except as provided in article 2 of the uniform commercial code."