MERCHANTS ENVIRONMENTAL INDUSTRIES, INC., Plaintiff, v. MONTGOMERY WARD AND COMPANY, INC., *et al.,* Defendants (Pioneer Development Corporation, Counterplaintiff-Appellant; Montgomery Ward and Company, Inc., Counterdefendant-Appellee).

First District (2nd Division) No. 1—92—0991

Opinion filed August 17, 1993.

Angelo Ruggiero, of Chicago, for appellant.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Alan L. Unikel, Mark A. Lies II, and Bryan W. Sill, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff Merchants Environmental Industries filed suit in circuit court, seeking to foreclose on its materialmen's lien which had attached to property owned by defendant/counterdefendant-appellee Montgomery Ward & Co., Inc. (Wards), and which had been developed by codefendant/counterplaintiff-appellant Pioneer Development Corp. (Pioneer), naming both Pioneer and Wards as defendants to the

action. Sometime before the filing of its complaint, Wards had contracted to sell the subject property through the medium of articles of agreement for a warranty deed. When Pioneer failed to comply with the terms of the parties' agreement, Wards declared Pioneer in default and retook possession of the building. However, while the building was in its control, Pioneer had procured the goods and services of plaintiff as well as other materialmen and contractors in its attempt to develop the property.

On December 1, 1978, while the foreclosure action was pending, the Illinois Secretary of State administratively dissolved Pioneer due to its failure to pay the franchise tax imposed by what was formerly section 131 of the Illinois Business Corporation Act (IBCA) (Ill. Rev. Stat. 1977, ch. 32, par. 157.131 (repealed, reenacted and now collected at Ill. Rev. Stat. 1991, ch. 32, par. 15.35)). Subsequent to that event, on June 26, 1979, Pioneer, without reference to its dissolution, filed a counterclaim against its codefendant Wards and, alleging that it held equitable title to the property, asked the court to subject it to an equitable lien. Pioneer's counterclaim estimated that the improvements made to the property added $300,000 to its value, and argued that such a lien would be an appropriate means of preventing Wards from being unjustly enriched. The complaint was amended in 1980 and again in 1982 to include additional counts seeking an accounting of profits and a rescission of the articles of agreement on the alternative bases of mutual or unilateral mistake and/or Wards' fraudulent inducement.

Meanwhile, in March 1980, creditors of Pioneer, unrelated to the instant action, filed a proceeding in bankruptcy court in order to secure its involuntary bankruptcy. During the pendency of that proceeding, the action to foreclose on the materialmen's lien was stayed, and at some point during the stay, Wards satisfied all outstanding liens, after which plaintiff dismissed its action. Thereafter, the counterclaim, which was the only remaining action, was placed on the circuit court's dormant calendar call. In September 1987 the bankruptcy trustee elected to abandon the claim against Wards, which decision was approved by the court, thus returning the claim to Pioneer. On April 26, 1990, Pioneer reasserted its right to the claim by moving the court to have the action taken off its dormant call and have it placed on the active calendar call.

Wards registered its objections to reinvigorating what it characterized as a stale action, arguing that not only did Pioneer lack the capacity to prosecute the claims, having been dissolved in 1978, but also because all of the events salient to the case occurred around that

time, and it worked a hardship on Wards to force it to defend the suit at that late date. Moreover, many of the witnesses it would need to present were no longer in the jurisdiction or would now be difficult to locate. The trial court disregarded these arguments and reinstated the counterclaim to active status.

Thereafter, Wards filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), wherein it reasserted grounds similar to those which had formed the substance of its objection to the reactivation of the claim. Judge Scotillo denied the motion but certified a question to this court pursuant to Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)) which asked whether Pioneer, as a dissolved corporation, could maintain a claim which had been abandoned by the bankruptcy trustee. This court denied Wards' petition praying that we review and resolve the certified question.

Upon denial of leave to bring the interlocutory appeal, the action was administratively reassigned to Judge Hourihane, who granted Wards' motion to reconsider Judge Scotillo's earlier denial of its section 2—619 motion to dismiss; Wards also reasserted the ground that Pioneer lacked standing to prosecute the suit. Judge Hourihane held that section 142 of the IBCA of 1933 (Ill. Rev. Stat. 1979, ch. 32, par. 157.142) divested Pioneer of its capacity to maintain the suit, and thus it lacked standing, as a consequence of which the court could not assert subject matter jurisdiction over its counterclaim. It is from this judgment that Pioneer filed its timely notice of appeal.

Pioneer asserts that the Illinois Business Corporation Act (Act) vests in all dissolved corporations the inviolable right to sue if the action is brought within two years of the date of dissolution. Wards responds that although the Act does allow a dissolved corporation to commence an action within the statutory two-year period, another portion of the Act prohibits the continued maintenance of such a suit in the event the dissolved corporation fails to pay its franchise tax to the State and remains in arrears. Wards also implicitly suggests that such a corporation must either be reinstated as a legally recognized corporation through payment of its arrearage within the five-year period allotted by statute or be deemed permanently incapable of pursuing its suspended claim.

■ In order to resolve this issue, we must address the interplay of two separate provisions of the IBCA of 1933, which Act, even though repealed and reenacted in 1983, nonetheless governs this dispute because it was initially filed in 1979. The first provision is sec-

tion 94 (Ill. Rev. Stat. 1979, ch. 32, par. 157.94), which provides in salient part:

> "The dissolution of a corporation *** by the issuance of a certificate of dissolution by the Secretary of State *** shall not take away or impair any remedy available to or against such corporation, *** for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name."

The other pertinent aspect of the 1933 version of the IBCA is section 142, which provides:

> "No corporation required to pay a franchise tax, license fee or penalty under this Act shall maintain any civil action until all such franchise taxes, license fees and penalties have been paid in full." Ill. Rev. Stat. 1979, ch. 32, par. 157.142.

In its attempt to harmonize these two sections, Wards opines that section 94 was intended to counteract the common law which had held that a dissolved corporation was incapable of suing or being sued and accordingly any actions to which a corporation was a party abated at the moment the corporation dissolved. (See *Shore Management Corp. v. Erickson* (1942), 314 Ill. App. 571, 41 N.E.2d 972 (abstract of opinion) (noting that an action by a corporation pending at the time of its dissolution abates at dissolution unless its survival is provided for by statute).) Wards further reasons that where the corporation is dissolved due to its failure to pay its franchise tax, even though that defunct corporation is allowed by section 94 to file the action, it is nonetheless stripped of its ability to prosecute to completion the preserved claim by the bar imposed by section 142. According to Wards, such a corporation consequently lacks the capacity to continue its action, which must, therefore, be dismissed.

Although Wards' parsing of the two separate sections of the Act is correct, its attempt to combine the two into a unitary scheme is not. The problem comes from its conclusion as to the result produced when a corporation is prevented from "maintaining" or prosecuting the action under section 142. In direct contrast to Wards' proposed result, it has long been recognized that a "suit could not be dismissed for failure to pay franchise taxes. It could only be continued until the taxes were paid." *Sheffield Steel & Iron Co. v. Jos. Joseph & Brothers Co.* (1925), 238 Ill. App. 45, 49; accord *Kaybill Corp. v. Cherne* (1974), 24 Ill. App. 3d 309, 314, 320 N.E.2d 598, 603 ("We have con-

sistently held that if a corporation which is delinquent in the payment of franchise taxes has started suit it may continue the prosecution of that suit by subsequent compliance with the statute"); *Jorgensen v. Baker* (1959), 21 Ill. App. 2d 196, 203, 157 N.E.2d 773, 777 ("Our courts have held that if a corporation, which is delinquent in the payment of franchise taxes, has started a suit, it may, by subsequent compliance with the statute, continue the prosecution of that suit"); see also *Goodsons & Co. v. Federal Republic of Nigeria* (S.D.N.Y. 1983), 558 F. Supp. 1204, 1206-07 (applying Illinois law and holding that "section [142] neither prevents a dissolved corporation from bringing suit within the two-year period [allotted by section 94], nor does it provide a basis for dismissal of an action brought by the dissolved corporation. [Citation.] Rather, a court would be empowered to stay the action until the defunct corporate entity made the required payment of the franchise taxes").

The clear lesson imparted by the above-cited cases is that section 142 was never intended to be fatal to a cause of action brought by a corporation which is dissolved for failure to remit its franchise taxes. If this were not the case, it would take from such a corporation the true benefit of being able to commence the case as guaranteed by section 94, a provision which ensures more than the rather meaningless right of being able merely to file a complaint after its dissolution. Instead, it provides that any corporation which brings an action within the two-year time limit will be able to pursue the claim to judgment, no matter how long its resolution will take. This precise conclusion was reached in *Canadian Ace Brewing v. Joseph Schlitz Brewing Co.* (7th Cir. 1980), 629 F.2d 1183, 1186, where the court held that under section 94 of the IBCA, a claim filed within the two-year limit may be reduced to judgment, even if the judgment is rendered outside the two-year period. See also *Chicago Title & Trust Co. v. Forty-one Thirty-six Wilcox Building Corp.* (1937), 302 U.S. 120, 128-29, 82 L. Ed. 147, 152, 58 S. Ct. 125, 129 (contemplating the statutory predecessors of section 94 and concluding that: "After two years, no proceedings may be *initiated* on behalf of the corporation in either state or federal courts, but such proceedings as have been instituted during that period in any of these courts may be prosecuted to completion"). (Emphasis in original.)

■ Consequently, section 142 should not be seen as an absolute bar to the prosecution of claims brought by corporations which are delinquent in the payment of their franchise taxes. Nor should the section be deemed to extinguish those claims which were filed pursuant to section 94 by a corporation so dissolved. Rather, it serves merely

as a temporary impediment to the completion of the action, a barrier which can be removed by the simple expedient of remitting to the State the franchise tax which is past due. Following this approach to sections 94 and 142 of the IBCA of 1933 (Ill. Rev. Stat. 1979, ch. 32, pars. 157.94, 157.142 (repealed, reenacted and now collected at Ill. Rev. Stat. 1991, ch. 32, pars. 12.80, 15.85, respectively)), we hold that the trial court in the case *sub judice* erred when it dismissed with prejudice Pioneer's counterclaims on the grounds that it had not paid to the State its past-due franchise taxes.

So as to leave no doubt, we also point out that Pioneer is patently incorrect when it intimates that it need not pay the amount it currently owes the State as a precondition to bringing its counterclaim to judgment. In an oblique fashion, it suggests that the tax and the concomitant barrier to the prosecution of suits applicable to those corporations which owe the tax apply only to those corporations which are still functioning. Although it is true that no franchise tax will be prospectively imposed on a corporation which is dissolved (see Ill. Rev. Stat. 1991, ch. 32, par. 15.35 ("For the privilege of exercising its franchises in this State, each domestic corporation shall pay to the Secretary of State the following franchise tax[ ] ***")), dissolution does not have the effect of absolving the newly dissolved corporation of its previous obligations. Such an obligation surely includes the tax incurred for the privilege of exercising its franchise in the State in the year prior to dissolution. 16A W. Fletcher, Cyclopedia of the Law of Private Corporations §8129, at 392 (rev. ed. 1988) ("But where, under the statute, the franchise tax is for the privilege of doing business during the preceding year, dissolution does not relieve it from liability for a tax imposed for doing business during the preceding year ***").

An argument similar to the one offered by Pioneer was raised in and rejected by the Washington State Appellate Court in *Inducon Corp. v. Crowley Maritime Corp.* (1989), 53 Wash. App. 872, 771 P.2d 356, *review denied* (1989), 113 Wash. 2d 1002, 777 P.2d 1050. There, under a statutory scheme much like our own, an administratively dissolved corporation which had failed to pay its State licensing fee posited that a statute which impeded the ability of corporations in arrears to the State to prosecute civil actions did not apply to it because it had been dissolved. The court disagreed and concluded that "[a]bsent clear legislative direction, it would be absurd to conclude that after being dissolved for nonpayment of fees, a corporation would be rewarded by an exemption from the requirement to pay fees prior to litigation." (*Inducon*, 53 Wash. App. at 874, 771 P.2d at 358.) In the case at bar, it would be equally absurd under our statute to reach the

conclusion that the debt of a dissolved corporation owed to the State disappears at the moment of dissolution.

Moreover, in *Amman Food & Liquor, Inc. v. Heritage Insurance Co.* (1978), 65 Ill. App. 3d 140, 382 N.E.2d 562, we found that the principal purpose of section 142, as well as section 82(a), a section which allows for the administrative dissolution of corporations that fail to remit their franchise tax (repealed and reenacted and now collected at Ill. Rev. Stat. 1991, ch. 32, par. 12.40), was to maximize tax revenues, employing both coercion and reward. Section 82(a) was the stick with which the State could threaten immediate dissolution of the corporation resulting from its failure to pay its franchise tax, and, along that similar vein, section 142 was the statutory carrot which motivated all corporations which were in arrears to the State to remit their debt, or they would be prevented from availing themselves of the benefits of the Illinois courts while still tax delinquent. Pioneer would nullify half of this scheme, destroying the incentive portion, with its construct that the corporate debt is cancelled the very instant the State employs its stick by dissolving it. But this would be arrantly improper, for, under the IBCA, all corporations, both the functioning and the dissolved, must pay to the State their past-due franchise taxes if they intend to litigate in the courts of our State.

■ Finally, although the next point was not expressly addressed by the parties, the transcript of the proceedings in the circuit court discloses that Judge Hourihane, while reconsidering Wards' motion to dismiss, did so with the apprehension that the past-due franchise tax must be paid within five years of its accrual, otherwise it can never be repaid. We assume that this belief arose from his reading of section 82(a) of the IBCA of 1933 (repealed, reenacted and now collected at Ill. Rev. Stat. 1991, ch. 32, par. 12.45), which provides that a corporation that has been administratively dissolved for failure to pay franchise taxes can have its corporate status restored by payment of the tax within five years of dissolution. But this provision is completely unrelated to a dissolved corporation's ability to maintain a suit. Instead, it concerns only how an administratively dissolved corporation can regain the advantages of corporate status without encountering once again the difficulties of reincorporation. Under the statute, it avoids the process of reincorporating by prompt payment of the past-due fees. See generally 16A W. Fletcher, Cyclopedia of the Law of Private Corporations §7998, at 91-92 (rev. ed. 1988).

Section 94 of the IBCA makes unmistakable, however, that a plaintiff's actual status as a corporation is not a condition precedent to its pursuit of a claim which arose while the corporation existed as a

legal entity. This assumes, of course, that the action is brought within two years of dissolution. It follows that the temporary disability imposed by section 142 on the dissolved corporation, barring the completion of the action brought under the auspices of section 94, should also be removable without regard to the dissolved corporation's ability to be restored to corporate status. Therefore, on remand, the trial court shall afford Pioneer an opportunity to repay the total amount it owes the State, to include any interest, penalties and costs, if it still wishes to pursue its claim.

Reversed and remanded.

McCORMICK, P.J., and DiVITO, J., concur.