(No. 31475.—

MANUEL MANN, Appellant, *vs.* THE BOARD OF EDUCATION OF NON-HIGH SCHOOL DISTRICT NUMBER 216, Appellee.

*Opinion filed May 18, 1950.*

George Dennis Gilley, of Chicago, for appellant.

Paul R. Schreiber, of Chicago, (Dwight W. Croessman, of counsel,) for appellee.

Mr. Justice Fulton delivered the opinion of the court:

Manuel Mann, hereinafter referred to as plaintiff, appeals from an order of the superior court of Cook County, sustaining an amended motion of the Board of Education of Non-High School District No. 216, Cook County, Illinois, hereinafter referred to as defendant, for judgment on the pleadings and dismissing the plaintiff's suit for want of equity.

The plaintiff, as a voter and taxpayer residing in the school district, is seeking to enjoin the board of education of said school district from issuing $500,000 worth of funding bonds. The plaintiff raises the issue as to the constitutionality of the issuance of the bonds, and the defendant, as one of its alternative defenses, raises the issue of the constitutionality of a statute commonly referred to as House Bill 1070. Laws of 1949, p. 1416.

The pleadings consist of a complaint, answer, reply and defendant's amended motion for judgment on the pleadings, and these pleadings constitute the entire record on this cause.

Count I of the complaint alleges that plaintiff is a voter and taxpayer residing in the district and that the defendant board of education has performed certain acts and passed certain resolutions preparatory to the issuance of $500,000 in funding bonds. The bonds are to be issued for the purpose of paying unpaid claims for tuition of eighth grade graduates residing within the school district; that on August 12, 1949, the Governor of Illinois approved House Bill 1070; that that act provides in effect, among other

things, that all non-high school districts, including No. 216, shall cease to exist on or before June 30, 1953; that House Bill 1070 makes no provision for, and fails to set forth any definitive procedure for, the payment of the bonded indebtedness of the district after June 30, 1953; that some of the bonds proposed to be issued shall not become due and payable until after said date; that therefore, the proposed issuance of the $500,000 in funding bonds is unauthorized, illegal and void, and prohibited by the plain language of House Bill 1070.

Count II of the complaint alleges that the defendant has already made a 1949 tax levy in the amount of $745,000 for the payment of tuition of eighth-grade graduates residing in the school district; that the proceeds from the sale of the bonds in question are to be used to pay the identical outstanding and unpaid tuition claims against the non-high school district, which, in contemplation of law, are to be paid by taxes collected by virtue of the 1949 levy; that by reason of this, the issuance of the bonds would constitute double taxation and would be in violation of section 2 of article II of our State constitution.

The answer, in response to count I of the complaint, admits the defendant is proposing to issue $500,0co in bonds for the purpose of paying unpaid tuition claims, but denies that the issuance would be illegal and void, and in support of its allegations sets up certain defenses. The first of these is that the issuance of the bonds is authorized by virtue of the provisions of section 19-9 of the School Code; secondly, the fact that the non-high school district will be dissolved on or before June 30, 1953, by reason of House Bill 1070, is not a bar to the issuance of the bonds because the definitive procedure for the payment of the bonds after June 30, 1953, is available by virtue of section 12 of article IX of the State constitution and the provisions of House Bill 1070 itself, and other applicable provisions of the Code; third, in the alternative, if there is

no method which can be used for the payment of the outstanding bonded indebtedness of the said non-high school district after June 30, 1953, then House Bill 1070 is unconstitutional because it impairs the obligation of the district's pre-existing contracts in violation of sections 2 and 14 of article II of our constitution.

Answering count II, the defendant denies that the issuance of the bonds would constitute double taxation, and states that the proceeds from the 1949 tax levy will not be used to pay the identical unpaid tuition claims which are to be paid from proceeds of the bonds. The 1949 levy is not to be used to pay presently outstanding tuition claims, and, as a matter of practical experience, the proceeds from the 1949 levy will not be available to the defendant until the fiscal year beginning July 1, 1950.

The errors relied upon by the plaintiff herein are (1) that House Bill 1070 prohibits the defendant from issuing the funding bonds, some of which will not become due and payable until after June 30, 1953, on or before which date Non-High School District 216 will have ceased to exist; and (2) the issuance of the funding bonds would constitute double taxation in violation of section 2 of article II of the constitution of Illinois.

It is the plaintiff's basic proposition that the defendant is not authorized to issue bonds which will not mature until after the extinction of the body politic for which the defendant acts, when the defendant has knowledge that the body politic is inevitably to be dissolved as of a date certain, and knowledge that no other municipal corporation is to be substituted therefor. To support this contention the plaintiff argues that we have often stated the rule to be that the legislature cannot grant the right to assess and collect taxes to any other than the corporate authorities of the municipalities or districts to be taxed. The plaintiff states that the defendant flies in the face of this prohibition by virtue of section 5 of its bond resolution wherein it is provided

for the levy of a direct annual tax upon all the taxable property now within the district for each of the years 1949 through 1966 in sufficient amount to pay the principal of, and interest on, the bonds. This is customary and is proper by virtue of the decisions of this court interpreting section 12 of article IX of the constitution of our State, wherein we hold that where the defendant has in law levied a tax for the years 1949 through 1966, the annual extension and collection of the tax is merely a ministerial duty. (*People ex rel. Stuckart* v. *Sandberg Co.,* 282 Ill. 245; *Booth* v. *Opel,* 244 Ill. 317; *People ex rel. Stuckart* v. *Day,* 277 Ill. 543.) The plaintiff argues from these cases that the defendant has presumptuously attempted to levy a tax for a period of thirteen years upon property which will not be within Non-High School District No. 216 over that period of time, and which the defendant knew, as of the date of the imposition of the tax, could not possibly be within the boundaries of the district because the district will be nonexistent after that date. Arriving at this conclusion, the plaintiff thereupon cites *People ex rel. Bergan* v. *New York Central Railroad Co.* 390 Ill. 30, wherein the railroad sought to reverse the judgment of the court of Kankakee County overruling an objection to a tax levy made for the year 1942 for a non-high school district in certain territories detached from the district. These lands were detached from the district on March 15, 1941, and on March 31, 1941, the board of education of the non-high school district had adopted a resolution providing for the issuance of funding bonds for the purpose of satisfying unpaid tuition claims against the district which debt had been incurred while the detached territories were still a part of the district. The clerk extended a tax against the properties within the detached territories for the purpose of paying in part the principal and the interest. We held, under these facts, that the tax extension by the county clerk against property in the detached territories was un-

authorized and that the statute giving him the purported authority so to do was unconstitutional for the reason that, for the year in which the tax was attempted to be levied, the board of education of the non-high school district was not a corporate authority of the detached territory and, therefore, had no power to levy the tax against it. It was stated therein that the power of the board of education to levy taxes is statutory. The language granting the power should be strictly construed and not extended beyond the import of the words used. We concluded there that after the detachment proceeding had been completed the board of education of the non-high school district was not a corporate authority of the detached territory.

In that case we cited the case of *Wetherell* v. *Devine*, 116 Ill. 631, for the rule that taxation may not be imposed without the consent of the taxpayers to be affected. In the case then before us the taxpayers of the detached territories had not been given an opportunity to vote on the question.

There are distinguishing features between *People* v. *New York Central Railroad Co.* 390 Ill. 30, and the instant cause. In the instant cause, the test laid down in *Wetherell* v. *Devine*, 116 Ill. 631, has been met in that the voters of Non-High School District No. 216 have had the opportunity to vote upon the question of the issuance of the bonds. Further, the defendant has already in law levied a tax for the years 1949 through 1966. Under the holdings of *Booth* v. *Opel*, 244 Ill. 317, and related cases, the annual extension and collection of the tax is merely a ministerial duty. In other words, the tax has been levied during a year in which Non-High School District No. 216 was in existence and the defendant was the corporate authority. In *People* v. *New York Central Railroad Company*, 390 Ill. 30, the board of education attempted to levy the tax against property which was not within its limits in the year in which the tax was levied.

It should be pointed out that section 19-10 of the School Code (Ill. Rev. Stat. 1949, chap. 122, par. 19-10,) provides that any high school district or non-high school district, operating under general law or special charter having a population of 500,000 or less, is authorized until July 1, 1951, to issue bonds for the purpose of paying orders issued for the wages of teachers or for the payment of claims against any such district. The only limitation is the one of five per cent set up by our constitution. Section 19-12 of the same code (Ill. Rev. Stat. 1949, chap. 122, par. 19-12,) provides that any district which has complied with section 19-11 and which is authorized to issue bonds under sections 19-10 and 19-11 shall adopt a resolution specifying the amount of indebtedness to be funded for whatever reason and shall also set forth the date, denomination, rate of interest and maturities of the bonds, fix all details with respect to the issue and execution thereof, and provide for the levy of a tax sufficient to pay both principal and interest of the bonds as they mature. House Bill 1070 does not prohibit expressly, the issuance of the bonds proposed to be issued here. It has long been held in this State that sections of the same statute should be construed as being consistent rather than inconsistent and should be interpreted as being *in pari materia*. (*People ex rel. Schlaeger* v. *Mattes*, 396 Ill. 348.) Section 12 of article IX of the constitution of Illinois provides that any county, city, school district or other municipal corporation incurring any indebtedness as aforesaid, shall before, or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same. While House Bill 1070 does not explicitly provide for the payment of the bonds after 1953 when Non-High School District No. 216 will dissolve by operation of law, it does provide that the obligation for providing education shall

fall upon the underlying grade school districts. It seems fairly clear to this court that under sections 19-10 and 19-12 of the School Code, a non-high school district may issue bonds for the purpose of meeting certain obligations incurred. There is nothing in House Bill 1070 which prevents this and it further provides that upon dissolution the obligation to provide the education shall fall upon the underlying grade school districts. It should be noted that upon the immediate issuance of the bonds the levy is made, and all that must be done is the collection of the tax from the territory comprising the school district at the time the levy was made. The sole power in the clerk now that the levy has been made is a ministerial one. The subsequent dissolution of the non-high school district will have no bearing upon the levy or the extension of the tax in years to come.

Under the view which we have taken of this cause, it is unnecessary to discuss at any length the constitutionality of House Bill 1070. Suffice it to say that we have carefully considered the arguments in this regard and find them without merit. The record is uncontradicted that the moneys to be derived from the funding bonds is to be used to pay claims for tuition not contemplated by the annual tax levy. This is sufficient to cure the objection of double taxation raised by the plaintiff.

It seems apparent to us that Non-High School District No. 216 was in proper exercise of its power in issuing the bonds in question and we hold there is nothing in House Bill 1070 to conflict with such issuance or which would make such issuance unconstitutional. Further, we find nothing in the application of House Bill 1070 to the facts in the instant cause which would render it unconstitutional. For the reasons stated herein, the decree of the superior court of Cook County is affirmed.

*Decree affirmed.*