**Edward J. CARVER, Plaintiff,**

v.

**SHELLER–GLOBE CORPORATION, Defendant.**

No. K84–498–CA8.

United States District Court, W.D. Michigan, S.D.

June 5, 1986.

---

Patrick J. Boog, Lansing, Mich., for plaintiff.

Dennis C. Kolenda, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich., for defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

Plaintiff, former employee of defendant Sheller-Globe Corporation, brings suit alleging a violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621 *et seq.* Plaintiff also states four state law claims: (1) wrongful discharge, (2) breach of an implied covenant of good faith and fair dealing, (3) intentional infliction of emotional distress, and (4) negligent job evaluation. All causes of action arise out of plaintiff's employment with and discharge from defendant corporation.

Defendant has moved to dismiss the four state law claims as they fail to state a claim upon which relief can be granted under Illinois law. Plaintiff contends Michigan law applies to the pendant state claims, and in the alternative, that if Illinois law applies, a claim is stated.

This Court finds Illinois law applies to the pendant state claims and dismisses Counts III, IV and V with prejudice.

## I. *FACTS*

Plaintiff is currently an Oklahoma resident. Defendant is incorporated under Ohio law with its principal place of business in Ohio. Plaintiff was hired by defendant in Iowa in 1972. Thereafter, he worked briefly in defendant's Indiana and Michigan plants with his final place of employment being Illinois.

Plaintiff worked as an Engineering Manager at the Quincy, Illinois plant from 1979 —1983. He was then demoted to Project Engineer. While employed in Illinois,

plaintiff encountered personality conflicts with his supervisor which led to plaintiff's medical leave from approximately February 14, 1984 until June 17, 1984. Plaintiff received medical and psychiatric care having been diagnosed as suffering from an acute anxiety disorder.

Plaintiff's doctor, and apparently defendant's company doctor, both felt plaintiff could return to work if transferred to another facility. It is disputed whether defendant sought a transfer for plaintiff.

It is further disputed whether plaintiff was actually terminated by the defendant or quit. Plaintiff was to have signed a personnel change notice which gave plaintiff eight weeks of severance pay as continued employment was not permitted due to medical reasons. Defendant took the above position as it felt plaintiff was unable to return to the Quincy plant and there were no openings for plaintiff in another facility. Plaintiff refused to sign the change notice as he felt to do so meant he was quitting. Defendant treats plaintiff as quitting his employment; plaintiff feels he was discharged.

## II. CHOICE OF LAW

■ Illinois law applies to the four pendant state claims. Michigan adopted the doctrine of lex loci delecti in *Abendschein v. Farrell,* 382 Mich. 510, 170 N.W.2d 137 (1969) (substantive law of the jurisdiction where the injury occurred governs).

The Court finds unpersuasive plaintiff's proposition that Michigan abandoned the lex loci detecti doctrine for lexi fori (forum's substantive law governs) in *Sexton v. Ryder Truck Rental, Inc.,* 413 Mich. 406, 320 N.W.2d 843 (1982). There a majority of Michigan's Supreme Court did adopt lex fori but only for certain personal injury and property damage cases. "[W]e presently adopt no extant methodology outright but hold that when two residents, or two corporations doing business in the

state, or any combination thereof, are involved in an accident in another state, the forum will apply its own law." *Id.* at 413, 320 N.W.2d 843.

*Sexton* dealt with torts arising from accidents involving aircraft or motor vehicles. This case deals with an employment relationship. Further, *Sexton* cannot be applied to this case as neither plaintiff nor defendant are Michigan residents. At most, defendant does business in Michigan as a plant is located within the state. The requirements set out in *Sexton* are not met in this case.

Plaintiff also cites *Smith v. Teledyne Industries, Inc.,* 578 F.Supp. 353 (E.D. Mich.1984) for the premise that Michigan law applies to the tort actions. The *Smith* case can be distinguished from this case as the plaintiff in Smith was a Michigan resident. Neither plaintiff nor defendant are Michigan residents in this case and Michigan has no interest in having its law govern.

Subsequent cases applying *Sexton* were analyzed in *Vogh v. American International Rent-A-Car, Inc.,* 134 Mich.App. 362, 350 N.W.2d 882 (1984). There the court found that where either a plaintiff or defendant was not a Michigan resident nor doing business in the state, the interests of each jurisdiction in having its own laws govern must be considered by the court. Applying the above ruling, this Court finds Michigan has no interest in this action. All of the events that gave rise to this suit occurred in Illinois.[1] Also, neither party was ever a resident of Michigan. Illinois has a greater interest in having its laws govern an employment situation where both employer and employee were residing and working in Illinois.

## III. STATE CLAIMS

Having determined that Illinois law governs all of the state claims, the Court ad-

---

1. The Court notes that normally the law of the state where a contract was entered into and performed governs a contract action. In this action, plaintiff was hired in Iowa. However, the bulk of plaintiff's employment occurred in Illinois. The Court finds Illinois law applies to the contract actions.

dresses the motions to dismiss Counts II–V.

The motion to dismiss is brought pursuant to Fed.R.Civ.P. 12(b)(6). The Court's inquiry at this point, before the reception of any evidence by affidavit or admission, is merely whether the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief. In making this determination, the allegations in the pleading are taken at "face value," *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). All reasonable inferences which might be drawn from the pleading must be indulged. *Fitzke v. Shappell*, 468 F.2d 1072, 1076 n. 6 (6th Cir.1972).

Provided that the claim for relief fulfills the requirements of Fed.R.Civ.P. 8(a), it "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## A. WRONGFUL DISCHARGE

■ Plaintiff alleges he was discharged without cause and in violation of an implied contract of employment based on an employees policy handbook and company practice. In Michigan, such allegations would state a cause of action under *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880, (1980) (policy provisions bind employer). In Illinois, the courts are split whether to recognize the reasoning in *Toussaint.*

In Illinois, an employment-at-will relationship can be terminated by either the employer or employee, for or without cause. *Criscione v. Sears, Roebuck & Co.,* 66 Ill.App.3d 664, 23 Ill.Dec. 455, 384 N.E.2d 91, 93 (1978) citing *Long v. Arthur Rubloff & Co.,* 27 Ill.App.3d 1013, 327 N.E.2d 346 (1975). This right to terminate is subject only to an applicable contract or statute. *Criscione,* 384 N.E.2d at 93.

Plaintiff makes no allegations that his employment was for a specified duration; therefore, his employment could be terminated with or without cause unless a contract or statute applied. Plaintiff claims the defendant had a policy or practice of only terminating employees for just cause. This policy or practice as well as the provisions in the employees handbook created an implied contract, thereby altering his "at-will" status. Plaintiff claims he could only be discharged for just cause.

The ultimate question is whether the policies and practices of defendant became an implied contract of employment giving rise to a cause of action for breach. If they did not, plaintiff has no claim as he was "at-will" and could be discharged without cause.

One view in Illinois is that a policy manual is not part of the employment contract unless (1) it is incorporated into a written contract or (2) it modifies a pre-existing contract and a mutuality of obligation between employer and employee was intended. *Sargent v. Illinois Institute of Technology,* 78 Ill.App.3d 117, 33 Ill.Dec. 937, 397 N.E.2d 443 (1979); *Rynar v. Ciba-Geigy Corp.,* 560 F.Supp. 619 (N.D.Ill.1983) (applying Illinois law).

The opposite view is adopted in *Kaiser v. Dixon,* 127 Ill.App.3d 251, 82 Ill.Dec. 275, 468 N.E.2d 822 (Ill.App. 2 Dist. 1984). There, the Court declined to follow the rationale in *Sargent* and found the employer bound to the terms of its policy manual. Particularly persuasive was the reasoning expressed in Michigan's *Toussaint* decision.

The *Kaiser* Court adopted this view even though the manual was adopted after plaintiff's employment and it was not "bargained for" by the employees. The court felt the manual imposed obligations on both the employees and employer. It went "far beyond a mere expression of employer policies and procedure as guidance or for informational purposes for [the] employees." *Kaiser,* 468 N.E.2d at 832.

Plaintiff, at least in some Illinois courts, has stated a claim for wrongful discharge. The Court notes that the Illinois Supreme Court denied leave to appeal on the *Kaiser* decision. *Kaiser v. Dixon*, 101 Ill.2d 582. Whether the denial of leave expresses the adoption of the *Kaiser* rationale is unknown. However, this Court, upon a fair reading of *Kaiser* views the decision as a third exception to when a policy manual becomes part of an employee's contract. That exception is to show the provisions create obligations on both employer and employee and are not a mere expression of policy and procedure for informational or guidance purposes.

Plaintiff has stated a claim for relief for wrongful discharge. This Court denies the motion to dismiss this claim.

### B. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

■ Plaintiff alleges that one of the terms of his employment contract was an implied covenant of good faith and fair dealing. Plaintiff alleges that the manner in which he was terminated was a breach of such covenant. This count must be dismissed as Illinois does not recognize such a cause of action.

In *Martin v. Federal Life Insurance Co.*, 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998 (1982),[2] the Court found that a separate tort cause of action for breach of an implied covenant of good faith and fair dealing does not exist in employment situations. Such a covenant is used essentially as a construction aid in determining the parties' intent. *Id.* 65 Ill.Dec. at 150–151, 440 N.E. at 1005–1006. The Court concluded that existing tort law principles were "adequate" without creating a new action based on a vague notion of fair dealing." *Id.* 65 Ill.Dec. at 151, 440 N.E. at 1006.

Those employees that have a contract of employment have a remedy for breach of that contract. And in limited circumstanc-

es, some at-will employees who have no actionable contract have a wrongful discharge action based on an implied duty in tort mandated by public policy. *Id.* 65 Ill. Dec. at 151, 440 N.E. at 1006.

The Court finds that plaintiff has failed to state a claim under Illinois law for a breach of an implied covenant of good faith and fair dealing. Any claim plaintiff has would be under a wrongful discharge claim or an express employment contract; therefore, Count III is dismissed.

### C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ The elements recognized by Illinois for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant, (2) severe emotional distress by the plaintiff, (3) intentional conduct by the defendant or conduct so reckless that the defendant knew with substantiality that severe emotional distress would result, and (4) actual and proximate causation of such distress. *Stoecklein v. Illinois Tool Works, Inc.*, 589 F.Supp. 139 (N.D.Ill.1984) *citing Public Finance Corp. v. Davis*, 66 Ill.2d 85, 89–90, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976). The outrageous conduct must "go beyond all possible bounds of decency" and the distress so severe that "no reasonable man could be expected to endure it." *Public Finance*, 66 Ill.2d at 90, 4 Ill.Dec. at 654, 360 N.E.2d at 767.

Plaintiff alleges but does not state any specific facts to support outrageous conduct by the defendant. Plaintiff's allegations state that agents of defendant subjected him to malicious, intentional and distressful harassment. In plaintiff's reply brief to defendant's motion to dismiss, plaintiff again states such outrageous conduct of defendant exists. Plaintiff even states he "intends to allege" such conduct and requests he be allowed to amend his complaint. Plaintiff admits his failure to state a claim.

**2.** *See also, Payne v. AHFI/Netherlands*, 522 F.Supp. 18 (N.D.Ill.1980) and *Ring v. R.J. Reynolds Industries, Inc.*, 597 F.Supp. 1277 (N.D.Ill.

1984) (Both failing to recognize a cause of action for breach of implied covenant of good faith and fair dealing).

The Court finds plaintiff has had every opportunity to indicate exactly what behavior of defendant's was so extreme and outrageous as to go beyond all bounds of decency. Discovery has been completed and plaintiff has failed to plead facts sufficient to support his claim and enable defendant to prepare a defense. Plaintiff's continued conclusory allegations give no indication of particular facts from which inferences may be drawn to support a claim of outrageous and extreme conduct.

Although this is a motion to dismiss and not summary judgment, the facts do not indicate extreme and outrageous conduct by the defendant. When "discharged," plaintiff was on medical leave and unable to return to work at the Illinois plant. Defendant states it attempted to transfer plaintiff. Even if they failed to seek a transfer, such conduct does not exceed all possible bounds of decency. Further, defendant assisted plaintiff in filing for long term disability with the company's insurance carrier; such disability was denied by the insurance company. Again, such conduct is not extreme and outrageous. The only possible conduct that plaintiff could allege to be outrageous is the personality conflict with his supervisor. As stated above, plaintiff has repeatedly failed to plead sufficient facts to support his claim. Therefore, this Court dismisses Count IV.

## D. NEGLIGENT JOB EVALUATION

■ Plaintiff alleges that defendant breached a duty to use ordinary and reasonable care in conducting periodic performance evaluations and in failing to determine if such evaluations were accurate. These evaluations were allegedly the reason that defendant refused to transfer plaintiff to another facility and also resulted in his discharge.

There are no Illinois cases that address this particular theory. Plaintiff cites *Chamberlain v. Bissell, Inc.*, 547 F.Supp. 1067 (W.D.Mich.1982), where a federal judge, interpreting Michigan law, found a duty existed to use reasonable care in conducting employee evaluations. Plaintiff posits that *Chamberlain* applies to Illinois law through the *Kaiser* decision. Plaintiff's contention is that through *Kaiser*, an employee's policy handbook becomes part of an implied contract giving rise to a cause of action for breach. With each policy provision, an obligation arises to perform that provision with reasonable care.

In this case, the policy handbook requires defendant to conduct an annual "performance appraisal." Therefore, plaintiff contends an obligation to conduct such an evaluation became part of the contract and a duty to perform the evaluation with reasonable care arose.

The Court is not persuaded that Illinois would adopt this particular theory. Illinois courts are currently split whether to recognize that an employer is bound by its policy manual in all employment relationships. (see analysis under Section A). This Court declines to adopt a theory that is derivative of a claim not yet fully recognized by Illinois.

In analogy, the Illinois courts have declined to recognize a separate tort cause of action for breach of an implied covenant of good faith and fair dealing in employment situations. This theory, like negligent evaluation, is a tort theory arising out of a contract either express or implied. The Court is not persuaded Illinois would adopt the theory of negligent job evaluation and dismisses Count V.

## IV. CONCLUSION

Having determined Illinois law applies to the four pendant state claims, this Court dismisses Count III—breach of implied covenant of good faith and fair dealing, Count IV—intentional infliction of emotional distress, and Count V—negligent job evaluation.